ESTATE OF GEORGE T RINALDI, SR v RINALDI

Docket No. 50196. Submitted May 12, 1981, at Detroit.—Decided December 16, 1981. Leave to appeal applied for.

Leonard Jarosz, as a secured party, brought an action for claim and delivery of a yacht against George Rinaldi, Jr., seeking immediate possession. George Rinaldi, Sr., was the guarantor of his son's obligation under the security agreement. Prior to the filing of the complaint, the yacht was awarded to Patricia Rinaldi, wife of George Rinaldi, Jr., in a judgment of divorce, subject to the security interest of Leonard Jarosz and Judy Jarosz. Thereafter, George Rinaldi, Sr., was assigned the lien on the yacht by the Jaroszes as well as Mr. Jarosz's interest in the claim and delivery action upon George Rinaldi, Sr.'s, payment of certain monies and his assumption of a mortgage on the yacht owed by the Jaroszes to City National Bank. Following the assignment, George Rinaldi, Sr., died, and his estate, Paul Green, executor, succeeded as the real party in interest. Subsequently, the yacht was sold, and the bank mortgage was discharged. The balance of the proceeds of the sale was deposited in an escrow account. Following hearings, St. Clair Circuit Court found that the estate's lien was valid but unenforceable because the actions of George Rinaldi, Sr. and Jr., in Rinaldi, Sr.'s, obtaining the assignment of the Jarosz lien were intended to reduce or eliminate Patricia Rinaldi's share of the marital assets and amounted to collusion, thereby defeating the lien. The court awarded the escrowed funds to Patricia Rinaldi, Ernest T. Oppliger, J. The estate appeals. *Held:*

1. The trial court correctly ruled that the lien was valid. However, it erred in ruling that the lien was unenforceable.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 880 *et seq.*
[2] 15A Am Jur 2d, Commercial Code § 15.
  17 Am Jur 2d, Contracts §§ 151, 153.
[3] 51 Am Jur 2d, Liens §§ 11, 12.
[4] 69 Am Jur 2d, Secured Transactions § 387.
  Sufficiency of secured party's signature on financing statement or security agreement under UCC § 9-402. 100 ALR3d 390.
[5] 69 Am Jur 2d, Secured Transactions §§ 351, 379.

The record reveals no fraud in the transaction between George Rinaldi and the Jaroszes. Any collusive efforts to reduce Patricia Rinaldi's share of marital assets were limited to the divorce action and did not render the subsequent assignment fraudulent. George Rinaldi, Sr.'s, hostility toward Patricia Rinaldi did not render the lien unenforceable.

2. The record reveals that the security agreement between the Jaroszes and George Rinaldi, Jr., was valid.

3. The security interest was not rendered unenforceable because of an error in the filing of the financing statement.

Reversed.

1. APPEAL — FINDINGS OF FACT.

Findings of fact by a trial court will not be set aside on appeal unless clearly erroneous; a finding is clearly erroneous where, although there is evidence to support it, a reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed (GCR 1963, 517.1).

2. CONTRACTS — UNIFORM COMMERCIAL CODE — VALIDITY OF CONTRACTS.

An agreement governed by the provisions of the Uniform Commercial Code may be invalidated on the basis of the principles of law and equity, including estoppel, fraud, misrepresentation, duress, or coercion (MCL 440.1103; MSA 19.1103).

3. LIENS — ENFORCEABILITY OF LIENS — MOTIVES OF PARTIES — FRAUD.

A valid lien against property is not rendered unenforceable by hostility on the part of the lienholder toward the owner of the incumbered property where a debt is due and owing; nor would such hostility render an assignment of the lien fraudulent, absent a showing of fraud, even where the motive of the assignor and assignee is to reduce the share of the marital assets of the property owner during divorce proceedings.

4. SECURED TRANSACTIONS — TYPEWRITTEN SIGNATURES — PAROL EVIDENCE.

A typewritten name on a security agreement suffices as a signature where parol evidence establishes an intention to authenticate.

5. SECURED TRANSACTIONS — FINANCING STATEMENTS — PERFECTED SECURITY INTERESTS.

An error made in filing a financing statement pursuant to the provisions of the Uniform Commercial Code governing secured

transactions does not invalidate a security interest; the error affects only the perfection of the security interest, and the interest is enforceable subject to the rights of those persons enumerated in the code as having priority (MCL 440.9301; MSA 19.9301).

*Colista, Green & Adams,* for plaintiff.

*Thomas W. Ricard,* for defendant.

Before: D. F. WALSH, P.J., and D. C. RILEY and R. D. KUHN,* JJ.

PER CURIAM. Plaintiff appeals from the circuit court's ruling that its valid security interest was unenforceable due to collusion between defendant's ex-husband and her father-in-law.

In October, 1972, Leonard and Judy Jarosz purchased a 43-foot, Egg Harbor Yacht from the Duffy Marina and Yacht Sales, Inc., in Mt. Clemens, Michigan. The Jaroszes executed a purchase money security agreement with the City National Bank for $45,000 plus interest.[1]

On August 2, 1974, George Rinaldi, Jr., purchased the boat from Leonard Jarosz and also executed a security agreement which called for 84 monthly payments of $760.71 and 4 lump sum payments of $5,000 at specific intervals. Subsequently, George Rinaldi, Sr., signed a copy of the purchase contract and acted as a guarantor of his son's obligations under the agreement. Rinaldi, Jr., made monthly payments through November, 1975.

In April, 1975, George Rinaldi, Jr., instituted divorce proceedings against defendant Patricia Rinaldi. The ownership of the yacht was in dispute throughout the duration of the divorce action. In a judgment entered on January 11, 1978, a Macomb

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] The total price of the boat was $75,000.

County Circuit Court judge found that the owner of the boat was George Rinaldi, Jr., not his father, as contended by Rinaldi, Jr., during the divorce proceedings. The court awarded the boat to Patricia Rinaldi as her sole property "subject to the security interest therein of L. W. Jarosz and Judy L. Jarosz".

From December, 1975, through November, 1977, Rinaldi, Sr., continued to tender the monthly installment payments under the purchase contract. When no payments were made beginning in December, 1977, Leonard Jarosz, the secured party under the agreement, brought an action for claim and delivery. In the complaint filed on March 7, 1978, Leonard Jarosz sought the immediate possession of the yacht due to the Rinaldis' default in making the monthly payments.

Thereafter, several hearings were held in the St. Clair County Circuit Court. In May, 1978, George Rinaldi, Sr., obtained from Leonard and Judy Jarosz an assignment of the lien and the interest in the claim and delivery action originally brought by Leonard Jarosz. Rinaldi, Sr., paid them approximately $24,192 and also assumed the underlying indebtedness to the City National Bank.

At a hearing on February 9, 1979, defendant attempted to demonstrate that the lien now held by Rinaldi, Sr., should not be enforced due to the collusive efforts of the Rinaldis, Sr. and Jr., in reducing and/or eliminating the equity in the boat. Defendant's testimony was confined to the actions of Rinaldi, Jr., during the divorce proceedings which included his attempts to lie about his real earnings and his ownership of the yacht, forcing defendant and her children to leave the family residence (owned by Rinaldi, Jr.'s, grandmother) because Rinaldi, Sr., would not repair a

furnace, and numerous statements by both father and son that defendant should not contest the divorce and should accept merely what was offered to her.

George Rinaldi, Sr., died unexpectedly on February 27, 1979. His estate is the current party in interest in the lawsuit.

In August, 1979, the boat was sold for $34,000. City National Bank the first priority secured party, received $16,403.75. The balance of $17,596.25 was deposited into an escrow account.

In a decision rendered on January 25, 1980, the circuit court ruled that defendant was entitled to the amount in the escrow account. The court stated that the lien held by the estate of Rinaldi, Sr., was valid but unenforceable because "the actions of George Rinaldi, Sr., and George Rinaldi, Jr., represent collusion and wrongdoing and, therefore, defeat the lien * * *".

The central issue on appeal is whether the trial court erred in finding collusion so as to defeat the lien. Plaintiff argues that there was insufficient evidence of the alleged collusion because defendant's testimony was limited solely to a retrial of the matters already decided in the divorce action. Plaintiff contends that the trial court's finding was clearly erroneous since there was no evidence of collusion with respect to the assignment of the security interest, which defendant acknowledged as a legally owed debt. We agree and reverse.

The findings of fact by a trial court shall not be set aside unless clearly erroneous. GCR 1963, 517.1. A finding is clearly erroneous where, although there is evidence to support it, a reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

Agreements under the Uniform Commercial Code can be invalidated based on principles of law and equity, including estoppel, fraud, misrepresentation, duress, or coercion. MCL 440.1103; MSA 19.1103. Collusion is defined as:

"[A]n agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law. It implies the existence of fraud of some kind, the employment of fraudulent means, or of lawful means for the accomplishment of an unlawful purpose." Black's Law Dictionary (4th ed), p 331.

In *Dickerman v Northern Trust Co,* 176 US 181, 190; 20 S Ct 311; 44 L Ed 423 (1899), the plaintiff brought a foreclosure suit based on the default in the payment of certain bonds. In response to the claim that the foreclosure suit was based on collusion, the Court stated:

"[Collusion] implies the existence of fraud of some kind, the employment of fraudulent means or of lawful means for the accomplishment of an unlawful purpose; but if the action be founded upon a just judgment, and be conducted according to the forms of law and with a due regard to the rights of parties, it is no defense that the plaintiff may have had some ulterior object in view beyond the recovery of a judgment, so long as such object was not an unlawful one. In *Morris v Tuthill,* 72 NY 575, which was also a suit to foreclose a mortgage, the court observed: 'The facts that the assignor of a mortgage and his assignee acted in concert with the view unnecessarily to harass and oppress the mortgagor and with intent to prevent payment, to the end that the equity of redemption might be foreclosed, and they become purchasers for less than the value, do not constitute a defense to an action to foreclose a mortgage. So, also, the facts that the assignee took title from

motives of malice, and solely with the view to bring an action, and that the assignor assigned from a like motive, and without consideration, furnish no defense, and do not impeach plaintiff's title. It is sufficient to sustain the action that the mortgage debt is due, has been transferred to and is owned by plaintiff; and the mortgagor can only arrest the action by paying or tendering and bringing into court the amount due.'

"If the law concerned itself with the motives of parties new complications would be introduced into suits which might seriously obscure their real merits. If the debt secured by a mortgage be justly due, it is no defense to a foreclosure that the mortgagee was animated by hostility or other bad motive. *Davis v Flagg,* 35 NJ Eq 491; *Dering v Winchelsea,* 1 Cox, Ch Cas 318; *McMullen v Ritchie,* 64 Fed Rep 253, 261; *Toler v East Tennessee, V & G R Co,* 67 Fed Rep 168."

Accord, *United States v Winters,* 224 F Supp 8, 9 (D Wyo, 1963).

In the instant case, a debt is owed to the holder of the Jarosz lien. The judgment of the divorce so stated and defendant's attorney and defendant herself admitted this obligation on several occasions throughout the course of the proceedings below.[2] The fact that the security interest was

[2] At the April 17, 1978, show cause hearing defendant's attorney stated:

"There's been no question that Mr. Jarosz has an interest in the boat as the seller.

\* \* \*

"I have no quarrel, as Mrs. Rinaldi's attorney, that Mr. Jarosz should get every cent he is entitled to as seller."

At the February 9, 1979, hearing, defendant Patricia Rinaldi testified as follows:

"*Q.* Mrs. Rinaldi, you indicated in the divorce judgment that you were given the boat, is that correct?

"*A.* Yes.

"*Q.* Wasn't there an extra condition on that, though, wasn't the boat given to you subject to the interest of Leonard and Judith Jarosz?

"*A.* Yes.

"*Q.* Isn't that in fact what it says in the judgment of divorce?

assigned to George Rinaldi, Sr., does not make this debt any less due and owing.

The testimony as to the alleged collusion between father and son in the present case was limited to their admittedly deceptive actions in the divorce action that was terminated in December, 1977. There was absolutely no testimony that through a fraudulent scheme between the two men Rinaldi, Sr., failed to pay valid consideration for the assignment of the Jarosz lien in May, 1978. The Rinaldis' efforts to reduce defendant's share of the marital assets in the divorce proceedings did not render the subsequent assignment of lien fraudulent, nor did Rinaldi, Sr.'s, hostility toward defendant make the lien unenforceable. *Dickerman, supra.*

Any reduction in defendant's share of the equity in the yacht was not due to Rinaldi, Sr.'s, acquisition of the Jarosz lien. The Jarosz lien had to be satisfied regardless of the indentity of the lienholder. The elimination of defendant's equity in the yacht was primarily due to the fact that the boat was not sold for $55,000 as originally contemplated in the judgment of divorce. Had the boat been sold for $55,000, defendant would have recovered in excess of $26,000. However, the boat was sold for only $34,000. After the bank's lien was satisfied, the balance was insufficient to satisfy the Jarosz security interest.

"*A.* Yes.

\* \* \*

"*Q.* Without handing you the judgment, Mrs. Rinaldi, you admit that the boat was given to you free and clear of any interest on the part of the plaintiff, your husband, isn't that true?

"*A.* Yes.

"*Q.* But subject to the security interest therein of Leonard W. Jarosz and Judy Jarosz, isn't that true?

"*A.* Yes."

It may be that Rinaldi, Jr., and Rinaldi, Sr., conspired to deprive the defendant of her rightful share of the marital estate by failing to make the payments on the boat and by failing to maintain it in marketable condition. There is no evidence, however, that there was any fraud in the transaction between Rinaldi, Sr., and the Jaroszes through which Rinaldi, Sr., acquired the Jarosz lien. The trial court correctly ruled that the lien was valid. Its ruling that the lien was nevertheless unenforceable, however, was erroneous.

We also reject defendant's argument that there was no valid security agreement between the parties. The lower court record contains written agreements signed by both Rinaldi, Jr., and Rinaldi, Sr. The one document cited by defendant as an improper security agreement because it does not include a handwritten signature does not support defendant's position. A typewritten name suffices as a "signed" writing, as long as parol evidence establishes an intention to authenticate. White and Summers, Uniform Commercial Code (2d ed), § 23-3, p 913. Also, any claimed irregularities with respect to the filed financing statement do not invalidate the security agreement. An error in filing affects only the perfection of the security interest. See MCL 440.9301; MSA 19.9301. The security interest is not rendered unenforceable by any errors in the filing of the financing statement.

The judgment of the circuit court is reversed.